BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT #101, Plaintiff-Appellee, *v.* CAROLINE PARLOR *et al.*, Defendants-Appellants.

Fifth District   No. 79-490

Opinion filed March 17, 1980.

JONES, P. J., dissenting.

Drach, Terrell and Deffenbaugh, P. C. of Springfield, for appellants.

James W. Sanders and Associates, of Marion, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendants, striking school teachers of the Meridian Education

Association (MEA), bring this interlocutory appeal from the order of the Circuit Court of Pulaski County refusing to dissolve a preliminary injunction issued in favor of plaintiff, Board of Education of Community Unit School District #101. The injunction, issued without notice to defendants and following an *ex parte* hearing, prohibited the teachers from picketing and ordered them back to work. Defendants' initial argument on appeal is that the issuance of the injunction without notice was in violation of the Illinois Injunction Act (Ill. Rev. Stat. 1977, ch. 69, par. 1 *et seq.*), where the verified complaint and attached affidavits failed to allege sufficient reasons why irreparable injury would have resulted to plaintiff had notice of the pending hearing been given to defendants. We agree with defendants and therefore need not address other issues raised in their brief.

On September 18, 1979, defendants went on strike against plaintiff school board and set up picket lines. Defendants claim that on the same day they sent letters to the attorney for the board, the president of the board and the superintendent of the school district, notifying them of the law firm representing MEA. The letters requested the board to notify one specific member of the firm in the event legal action against MEA was contemplated and informed the board where he could be located.

The next day, plaintiff filed a complaint for injunctive relief against defendant in the Circuit Court of Pulaski County. Without notice to defendants and following an *ex parte* hearing, the court issued the above-mentioned preliminary injunction. On September 25, defendants moved to dissolve the injunction. At the hearing on this motion held on September 27, 1979, MEA's attorney testified that on or about September 18, he met the attorney for the board of education in court in connection with an unrelated legal matter. According to MEA's attorney, the board attorney told him: "Why don't we go down and get the matter at Meridian settled tomorrow."

At this same hearing, Ben Brinkley, a representative of the Illinois Education Association (IEA) and Caroline Parlor, one of the defendants, testified that on the evening of September 18, they met plaintiff's attorney after a board meeting and asked him to notify defendants' attorney if the board decided to file for an injunction. According to these witnesses, the board attorney responded that he would. The board attorney acknowledged that a discussion had occurred with the IEA representative but stated that he told him: "I haven't decided whether I'm going to call Bob [MEA's attorney]."

■■ Initially, whether we characterize the injunction issued by the trial court as a temporary restraining order (Ill. Rev. Stat. 1977, ch. 69, par. 3—1), as alleged by defendants, or a preliminary injunction (Ill. Rev. Stat. 1977, ch. 69, par. 3), as asserted by plaintiff, has no bearing on the

outcome of the case. Under either section of the Illinois Injunction Act, the court shall not grant the respective injunctions without notice to the opposing party unless it clearly appears from the specific facts presented in the verified complaint and any affidavits "that immediate and irreparable injury, loss or damage will result to the applicant before notice can be served and a hearing had thereon." Ill. Rev. Stat. 1977, ch. 69, pars. 3, 3—1.

■■ The granting of injunctive relief without notice is an extraordinary remedy and is appropriate only under the most extreme and urgent circumstances. (*Bettendorf-Stanford Bakery Equipment Co. v. UAW International* (1977), 49 Ill. App. 3d 20, 363 N.E.2d 867; *Sangamo Electric Co. v. UAW International* (1976), 42 Ill. App. 3d 563, 356 N.E.2d 389.) As stated in *Skarpinski v. Veterans of Foreign Wars* (1951), 343 Ill. App. 271, 274, 98 N.E.2d 858, 859:

> "In the most primitive concepts of justice, one of the fundamental requisites for the exercise of judicial authority over the person or property of another is notice. The exceptions to this rule are rare, indeed. They embrace cases where by a stroke of the pen, a movement of the hand, or a tour de force executed overnight the defendant intends to and can destroy the substance of the litigation and thus defeat the power of the court to do justice. Caution and circumspection must be the watchwords to guide the court's action and any doubts as to its wisdom must be resolved against the action."

All courts that have addressed this issue have indicated that the critical inquiry in determining the propriety of an injunction without notice is whether in the minutes or hours necessary to procure defendant's appearance, defendant could and would take such action as to obstruct seriously the court from dealing justly and effectively with the issues in dispute. See, *e.g.*, *Bettendorf-Stanford Bakery Equipment Co. v. UAW*; *Sangamo Electric Co. v. UAW*; *Miollis v. Schneider* (1966), 77 Ill. App. 2d 420, 222 N.E.2d 715; *Schaefer v. Stephens-Adamson Manufacturing Co.* (1962), 36 Ill. App. 2d 310, 183 N.E.2d 575; *Skarpinski v. Veterans of Foreign Wars*.

■■ Applying these principles, we believe plaintiff's complaint and attached affidavits did not allege facts sufficient to demonstrate immediate and irreparable injury to plaintiff prior to the giving of notice to defendants. In pertinent part, the complaint and affidavits merely alleged that State aid and student instructional time were being lost; that the students were being demoralized by the actions of the defendants; and that the pickets were hindering construction of a new school building. The pleadings fail to suggest how plaintiff would be irreparably damaged in the brief time it would take to notify defendants' attorney, who was

well known to plaintiff, or any of the individual striking teachers, also known to the board. (See *Sangamo Electric Co. v. UAW.*) As indicated in *Skarpinski,* telephone communication with known opponents is easy and can often secure their presence within a few minutes. Furthermore, the delay resulting from notifying defendants would not cause any loss of school aid or instructional time where, as suggested in *Board of Trustees v. Cook County College Teachers Union Local 1600* (1976), 42 Ill. App. 3d 1056, 356 N.E.2d 1089, a case involving an injunction issued without sufficient notice against striking teachers, classes could not have commenced until the following day, and where, in any event, the danger of any potential losses could be easily alleviated by the rescheduling of the school calendar. In addition, any decrease of student morale in the time it would take plaintiff to notify defendants would be minimal, if not nonexistent, and would certainly not be considered irreparable damage. And the construction of the new school would not be substantially hindered in the short time it takes to give notice to a known opponent. The alleged facts, therefore, offered by plaintiff in support of its argument clearly do not constitute the extreme and urgent circumstances necessary to dispense with the notice requirements.

■■ In justifying the issuance of an injunction without notice, the court reasoned in part that because strikes by public school teachers are clearly in violation of law it had "jurisdiction to enjoin the illegal act without notice." The mere fact that the petition alleged a clear-cut violation of law is irrelevant to the issue before us. The critical inquiry in all cases of this kind, as we have previously stated, is whether during the period it takes to give notice, the opponent will take such measures as to destroy the substance of the litigation or otherwise obstruct the court from dealing effectively with the issues. Various Illinois decisions have implicitly recognized that the granting of injunctive relief without notice is not mandated merely because a petition alleges what is clearly an unlawful labor practice. For example, in *Bettendorf-Stanford Bakery Equipment Co.,* which the trial court sought to distinguish from the present controversy, petitioner company requested the issuance of an injunction without notice to enjoin unlawful picketing practices of its striking employees. Notwithstanding the allegations in the petition of clearly illegal activities, we reversed the order of the trial court granting injunctive relief stating that plaintiff did not allege "specific facts indicating that immediate and irreparable injury would result before notice could be given to defendants." (49 Ill. App. 3d 20, 23, 363 N.E.2d 867, 869. (See also *Sangamo Electric Co. v. UAW.*) Similarly, in *Board of Trustees,* involving a labor dispute in which a school board sought to enjoin an unlawful teachers' strike, the attorney for the union did not receive notice until immediately prior to the hearing and consequently

did not arrive in court until a few minutes after the issuance of the injunction order. After noting that the injunction was in effect an *ex parte* order, the appellate court agreed with the union that the issuance of the temporary restraining order without notice violated the Illinois Injunction Act as the delay caused by notice and a hearing did not irreparably damage the applicant. In both *Bettendorf* and *Board of Trustees*, as in the present case, the issuance of an injunction without notice was improper notwithstanding the petitioner's allegations of unquestionably illegal activities of the union members.

■■ In conclusion, "[w]hen injunctive relief is granted without notice where notice should have been given, the appellate court will reverse without regard to any other question." (*Bettendorf*, 49 Ill. App. 3d 20, 24, 363 N.E.2d 867, 870.) Accordingly, we reverse the order of the Circuit Court of Pulaski County granting injunctive relief without notice.

Reversed.

KASSERMAN, J., concurs.

Mr. PRESIDING JUSTICE JONES, dissenting:
I respectfully dissent.

The defendants freely state in their brief that they went on strike and set up picket lines. Defendants' strike and picketing were with the certain knowledge that it is the well-settled rule in Illinois that teacher strikes are illegal. *Board of Education v. Kankakee Federation of Teachers Local No. 866* (1970), 46 Ill. 2d 439, 264 N.E.2d 18; *Board of Education v. Redding* (1965), 32 Ill. 2d 567, 207 N.E.2d 427.

In argument in their brief the defendants cite the case of *Bettendorf-Stanford Bakery Equipment Co. v. UAW International* (1977), 49 Ill. App. 3d 20, 363 N.E.2d 867, as a case factually similar to this one. Such assertion is patently incorrect because in this case the strike was illegal from its inception.

The majority terms as irrelevant the fact that the petition for the preliminary injunction alleged a clear-cut violation of law. With that I disagree. By requiring notice to striking teachers prior to the issuance of a preliminary injunction, the majority opinion lends credence and recognition to the illegal strike. Defendants now have been permitted to accomplish by illegal means that which they could not attain by legal means.

What is the function of notice when the activity sought to be suppressed is illegal and known to be so by those engaging in that activity? The only office of notice in such case can be to further extend the illegal activity. With the advent of the majority opinion the defendants

have used procedural forces of law to justify and extend an illegal act. Surely an anomaly is created. Form rules, substance begs.

"[I]mmediate and irreparable injury, loss or damage" which stand as a prerequisite to the issuance of the preliminary injunction in this case were found to exist by the trial court. To such finding could be added the loss of respect for law and legal process.

I would affirm the issuance of the preliminary injunction by the trial court.